UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIVA NALABOTU,<br><br>　　　　　　　　*Plaintiff,*<br><br>　v.<br><br>OMNIA INVESTMENT ADVISORS LLC, WILLIAM C. OVERSTREET, DANIEL J. DOXEY, BRAINS LLC d/b/a FUND LAUNCH a/k/a INVESTMENT FUND SECRETS a/k/a BLACK CARD, EMVI ENTERPRISES, LLC, BRIDGER PENNINGTON, AND MASON VRANES,<br><br>　　　　　　　　*Defendants.* | Case No. 1:25-CV-8660<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT** |

　　　　Plaintiff Siva Nalabotu, DVM, MS, PhD ("Dr. Nalabotu" or "Plaintiff"), by counsel, brings this action against Defendants Omnia Investment Advisors LLC ("Omnia"), William C. Overstreet ("Overstreet"), Daniel J. Doxey ("Doxey"), Brains LLC d/b/a Fund Launch a/k/a Investment Fund Secrets a/k/a Black Card ("Brains"), EMVI Enterprises, LLC ("EMVI"), Bridger Pennington ("Pennington"), and Mason Vranes ("Vranes") (collectively "Defendants"), and in support thereof, alleges as follows:

### NATURE OF THE ACTION

1.　　This is an action to enforce a promissory note and guaranty and to recover damages arising from the breach and default of these instruments by an individual (Doxey) who claimed to be a financial investment expert, but in reality, was nothing more than a confidence man who knowingly or negligently misrepresented Doxey's ability to ensure remarkable returns on Plaintiff's investment while violating securities laws, in conjunction with various co-conspirators.

2.　　Assisting Doxey in this scheme to defraud was his erstwhile employer, Brains, which was

further controlled by EMVI, which Pennington and Vranes controlled.

3. Dr. Nalabotu is the payee of a promissory note and security that was signed and sold by Doxey and personally guaranteed by Overstreet for $350,000.00 for the benefit of Omnia. Dr. Nalabotu was introduced to Omnia, Doxey, and this fraudulent business enterprise through Brains.

4. Upon information and belief, Defendants, masquerading as an investment coaching group, lured customers/clients like Plaintiff with promises of starting a hedge fund or providing other financial services. Once these client investors joined one of Brains' operations, a financial "coach" (such as Doxey) would coax the client investor to invest in transactions or "deals" through third-party entities which the coach/advisor controlled (such as Omnia). These "coaches" subsequently obtain the client-investor's funds in exchange for worthless promissory notes. These so-called investment experts would also find their client-investor victims' personal guarantors for their worthless promissory notes.

5. Upon information and belief, Brains and Pennington/Vranes ostensibly facilitate this fraud, whereby their client's belief in the success of the nonexistent enterprise—introduced and promoted by one of the coaches—is fostered by the payment of quick returns to the first investors from money invested by later investors.

6. Defendants have failed to make any payments on the principal balance and interest of the note, which continues to accrue. Defendants Brains and Pennington/Vranes have operated in concerted action with Defendant Doxey and Omnia to accomplish an unlawful purpose or to accomplish some purpose by unlawful means. As such, Plaintiff is entitled to recover damages for the breach and default, plus reasonable attorneys' fees and costs.

## PARTIES

7. Plaintiff is a citizen of Indiana, residing and domiciled in Fishers, IN.

8. Defendant Omnia is a limited liability company organized under the laws of the State of Texas with a principal place of business at 138 E 12300 S, Ste. C-1043, Draper, UT 84020. Omnia consists of two members, who are Daniel J. Doxey, a resident, domiciliary, and citizen of Utah, and Alyssa J. Doxey, also a resident, domiciliary, and citizen of Utah.

9. Defendant William Curtis Overstreet is a citizen of Texas, with a principal address at 2601 Ridgmar Plaza, Ste 204, Woodsfield, TX, 76116 and residing and domiciled at 2600 Lake Austin Blvd., Apt. 2101, Austin, TX, 78703.

10. Defendant Daniel J. Doxey is a citizen of Utah, residing and domiciled at 12122 S. Hidden Valley Rd. Sandy, UT 84092-5927.

11. Defendant Brains is a limited liability company organized under the laws of the State of Utah with a principal place of business at 13748 S. Kennington Court, Draper, UT 84020.

12. Defendant EMVI is a limited liability company organized under the laws of the State of Utah with a principal place of business at 77 West 4800 North, Suite C-322, Provo, UT 84604. EMVI consists of two members, Pennington and Vranes, both residents of Utah.

13. Defendant Bridger Pennington is a citizen of Utah, residing and domiciled at 12122 S. Hidden Valley Rd. Sandy, UT 84092-5927.

14. Defendant Mason Vranes is a citizen of Utah, residing and domiciled at 12122 S. Hidden Valley Rd. Sandy, UT 84092-5927.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

16. This Court also has jurisdiction under 15 U.S.C. § 77v(a) because Plaintiff brings claims

under the Securities Act of 1933.

17. The Court has personal jurisdiction over Defendants because this action arises from Defendants' transaction of business in the Southern District of New York and from their actions causing tortious injury in the Southern District of New York.

18. Plaintiff previously sued Defendants in the Southern District of Indiana, Case No. 1:23-CV-00985-JRS-TAB, but that case was dismissed <u>without</u> prejudice for lack of jurisdiction and improper venue, wherein it was determined that the Southern District of New York would be a more appropriate venue based on the governing documentation. *See ECF #72*, Order on Motions to Dismiss or Transfer Venue and on Motions for Summary Judgment, issued September 27, 2024.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.

## **GENERAL ALLEGATIONS**

**A.    Introduction to Defendants Doxey, Omnia, and Brains.**

20. Dr. Nalabotu is a business owner in Indiana who wanted to learn more about investing, including potentially raising capital to expand his veterinary operations.

21. Dr. Nalabotu sought assistance with learning about financial investments, and from his home in Noblesville, Indiana, he connected with Investment Fund Secrets, an entity owned by Brains that also conducted business under the names: Fund Launch, Investment Fund Secrets, and Black Card.

22. Brains is wholly owned by EMVI, which is wholly owned by Pennington and Vranes.

23. Dr. Nalabotu joined Brains, paying at least ten thousand dollars ($10,000.00) as the admission fee for this group.

24. At all times, Brains and its subsidiaries and owners/controllers presented the investment

group as secretive and exclusive in order to lure in victims like Dr. Nalabotu.

25.  In exchange for his $10,000, Dr. Nalabotu and over one hundred other attendees were invited to several conferences, including one in Mexico and in Utah.

26.  At one such conference in 2022, Dr. Nalabotu met Doxey, who held himself out as a financial investment expert and a coach and financial advisor for Brains.

27.  Upon information and belief, Doxey has no legitimate training as a financial investment expert or financial adviser. Instead, Doxey's representations about his experience and training were part of his confidence man routine.

28.  Doxey was one of several "investment experts" employed on the Brains staff and dispatched to the financial consulting entities under the Brains umbrella.

29.  Using his alleged history of financial success to bolster his scheme, Doxey entreated Dr. Nalabotu to enter into a business transaction through Omnia that Doxey promised would yield Dr. Nalabotu extraordinary returns.

30.  Doxey, acting in his capacity as a financial advisor on staff at Brains, supplied false information for the guidance of Dr. Nalabotu in their business transaction.

31.  Brains facilitated Doxey's misrepresentations and scheme to defraud Dr. Nalabotu by hosting these financial conferences, whereby Doxey was able to continuously mislead Plaintiff.

**B.     The Promissory Note.**

32.  Doxey ultimately convinced Dr. Nalabotu to invest with him/Omnia/Brains and sold an investment contract to him (i.e., an unregistered security) in the form of a promissory note for that purpose.

33.  On December 12, 2022, Defendant Doxey signed a promissory note (the "Promissory Note") as Manager of Omnia for $350,000.00 (the "Principal Amount") in favor of Dr. Nalabotu.

34.     A true and correct copy of the Promissory Note and Guaranty is attached hereto as <u>Exhibit A</u>.

35.     As part of an underlying transaction (the "Underlying Transaction"), Omnia "desire[d] to place into escrow" the Principal Amount with a third party in exchange for a negotiated return of its capital and a negotiated return to enable the funding of a loan for the third party (the "Contingent Transaction"). *Id.*

36.     Pursuant to the terms of the Promissory Note, Dr. Nalabotu agreed to lend Omnia the Principal Amount until January 30, 2023 (the "Maturity Date") so that Omnia could fund the underlying transaction. *Id.*

37.     Omnia promised to pay Dr. Nalabotu on or before the Maturity Date of the Promissory Note. *Id.*

38.     In the event of the completion of the Contingent Transaction, Omnia promised to pay Dr. Nalabotu an amount equal to the Principal Amount (a 100% interest return) in addition to a "Contingent Interest Amount." *Id.*

39.     The Promissory Note allowed for Dr. Nalabotu to recall and receive the Principal Amount plus 25% of the interest amount prior to the Maturity Date in the event the Contingent Transaction was not funded by January 30, 2023.

40.     Upon default, the Promissory Note stated that interest "shall accrue on all unpaid amounts from the date of default until it is paid in full at a rate of eighteen (18%) percent per annum." *Id.*

**C.      The Guarantor "Found" By Doxey.**

41.     The Promissory Note was secured by a personal guaranty signed by Overstreet as the Guarantor. *See* <u>Exh. A</u>.

42.     Overstreet was unknown to Dr. Nalabotu, but Doxey just so happened to "find" Overstreet

at the exact opportune time to effectuate this business transaction.

43.     Omnia defaulted under the Promissory Note by: (i) failing to pay the Principal Amount by the Maturity Date; and (ii) failing to make any payments towards the outstanding balance or interest.

44.     Omnia agreed to pay or reimburse Dr. Nalabotu for all costs and expenses, including costs of litigations or counsels' fees, in connection with any default in the performance of any of Omnia's payment or other obligations and any enforcement or collection proceedings which resulted from such default. *Id*.

45.     Overstreet signed the Guaranty for the Promissory Note. *Id.*

46.     Overstreet as Guarantor to the Promissory Note agreed to indemnify Dr. Nalabotu and hold him harmless against all obligations, demands, losses, or liabilities, suffered, incurred, or paid by Dr. Nalabotu in connection with the Promissory Note.

**D.      Dr. Nalabotu's Damages.**

47.     Dr. Nalabotu relied on Defendants' representations in choosing to transfer $350,000 from his Merchants Bank account to Omnia.

48.     Dr. Nalabotu relied on Brains' representations in also choosing to pay Brains $10,000 as an initial up-front "joining" fee that was ultimately a sham.

49.     Exclusive of accrued interest, late fees, attorneys' fees, and other charges, as of May 2, 2023, Defendants owe Dr. Nalabotu $350,000.00 in principal under the Promissory Note.

50.     Dr. Nalabotu has also recouped nothing for his $10,000 initial joining fee.

51.     Dr. Nalabotu owns and holds the Promissory Note.

52.     Doxey held a pecuniary interest in the Promissory Note as manager of Omnia.

53.     Doxey supplied Dr. Nalabotu with information on Omnia's purported ability to repay the

Principal Amount and any contingent interest in an attempt to guide his business transaction with Omnia. Upon information and belief, such information was false.

54. Doxey failed to exercise reasonable care or competence in obtaining or communicating this false information.

55. Dr. Nalabotu justifiably relied on the information supplied by Doxey and promoted by Brains as his employer.

56. Dr. Nalabotu has suffered a pecuniary loss as a result of this false information.

57. Omnia is in default under the Promissory Note for, among other things, failing to pay the Principal Amount and all relevant interest due and owing; and Overstreet as Guarantor is in default under the Guaranty for, among other things, failing to pay the amounts due and owing under the Guaranty (the "Defaults").

58. Brains, by and through its principals, Pennington and Vranes, fully support, promote, and encourage the false activity and fraudulent investments offered by Omnia.

59. Dr. Nalabotu has suffered a pecuniary loss as a result of the misinformation promoted by Brains and Pennington/Vranes.

60. Despite Dr. Nalabotu's demands, Defendants have failed to repay the indebtedness due and payable under the Promissory Note and the Guaranty.

## CAUSES OF ACTION

61. Dr. Nalabotu incorporates by reference all allegations set forth above in the preceding paragraphs as though fully set forth herein for all the foregoing causes of action.

### Count I – Breach of Promissory Note (Omnia and Doxey)

62. Defendants promised to pay Dr. Nalabotu $350,000.00 in addition to a negotiated return according to the terms of the Promissory Note.

63. Defendants Omnia and Doxey failed to pay Dr. Nalabotu the amount promised in the Promissory Note, and have breached their obligations thereunder.

64. Dr. Nalabotu is the holder of the Promissory Note and is entitled to payment thereunder from Defendants, in addition to attorney's fees and interest.

### Count II – Breach of Guaranty (Overstreet)

65. On December 12, 2022, Overstreet executed a personal Guaranty, pursuant to which he unconditionally, absolutely, and irrevocably guaranteed repayment of the Principal Amount and the full and prompt payment of all sums due under the Promissory Note, in addition to all legal costs and expenses of collection. *See* Exh. A.

66. Defendant Overstreet has failed to make any payment to Dr. Nalabotu of all amounts due and owing under the Promissory Note to the extent required by Overstreet's Guaranty.

67. Defendant Overstreet is in breach of his Guaranty on the Promissory Note and Dr. Nalabotu is entitled to payment thereunder from him, in addition to attorney's fees and interest.

### Count III – Unjust Enrichment (All Defendants)

68. In the alternative, Defendants have been unjustly enriched, and Plaintiff has been impoverished, in the Principal Amount of the Promissory Note.

69. Dr. Nalabotu is entitled to the value of the Principal Amount and all applicable interest pursuant to the terms of the Promissory Note.

### Count IV – Conversion (All Defendants)

70. The Promissory Note identifies and segregates a specific fund for $350,000.00 and identifies an obligation to return it Dr. Nalabotu.

71. Dr. Nalabotu has a possessory right or interest in the Principal Amount.

72. Defendants' dominion over the Principal Amount in derogation of Dr. Nalabotu's rights

constitutes conversion.

### Count V – Negligent Misrepresentation (Doxey, Omnia, and Brains)

73. Doxey, in the course of his business, profession, employment, or in the transaction in which he had a pecuniary interest (the Promissory Note), supplied false information for the guidance of Dr. Nalabotu in the business transaction.

74. Omnia, in the course of his business, profession, employment, or in the transaction in which it had a pecuniary interest (the Promissory Note), supplied false information for the guidance of Dr. Nalabotu in the business transaction.

75. Brains, in the course of their business, profession, employment, or in the transaction in which it had a pecuniary interest (the Promissory Note), supplied false information about the abilities of its staff and advisors (namely Doxey) for the guidance of Dr. Nalabotu in their business transaction.

76. Doxey and Brains failed to exercise reasonable care or competence in obtaining or communicating financial investment information to Dr. Nalabotu.

77. Dr. Nalabotu justifiably relied upon the information supplied by Doxey and Brains; and suffered pecuniary loss as a result.

78. Dr. Nalabotu is entitled to all appropriate relief and damages caused by Brains and Doxey's negligent misrepresentations.

### Count VI – Fraud (All Defendants)

79. Defendants knowingly and intentionally affirmatively misrepresented that:
    - Doxey was a qualified, legitimate, and experienced investment advisor;
    - Omnia was a qualified, legitimate, and experienced investment advisor;
    - Overstreet was a qualified, legitimate guarantor;
    - Brains was a qualified, legitimate, and experienced investment advisor;
    - The Promissory Note was a legitimate transaction with a *bona fide* third party;

- Plaintiff would receive a return on his investment;

80. Defendants also knowingly and intentionally failed to disclose that:

- The Promissory Note was an unregistered security;
- Defendants were not licensed or otherwise authorized to lawfully market, advertise, or sell unregistered securities.

81. Defendants had knowledge that these representations were false at the time they were made, or Defendants knew that Plaintiff would need to know the truth of these representations before entering into any business with Defendants.

82. All of Defendants' misrepresentations were made with the intent to induce Plaintiff into entering into a transaction that he would not have otherwise entered into.

83. Plaintiff's reliance upon Defendants' misrepresentations was justifiable and to Plaintiff's detriment.

84. Due to Defendants' knowing and intentional misrepresentations, Plaintiff has been damaged in an amount to be determined at trial, including exemplary damages, costs, interest, and attorney's fees as authorized by law.

## Count VII – Civil Conspiracy (All Defendants)

85. By acting to convert Plaintiff's funds for their own purposes, Defendants engaged in a concerted action to deprive Plaintiff of what was rightfully his.

86. Defendants' actions were undertaken knowingly and with a wrongful intent and in a joint endeavor to commit conversion.

87. Plaintiff has suffered and continues to suffer damages as a direct and proximate result of Defendants' concerted actions.

88. Accordingly, Defendants should be held jointly and severally liable for Plaintiff's damages.

### Count VIII – Violations of Section 12(a)(1) of the Securities Act (All Defendants)

89. This count is brought pursuant to Section 12(a)(1) of the 1933 Act, 15 U.S.C. § 77l(a)(1).

90. The Promissory Note and Underlying Transaction constituted the offering or selling of a security because the Underlying Transaction constituted an investment of money in a common enterprise with an expectation of profits to be derived from the benefits of others.

91. There was no registration in effect for the security.

92. None of the Defendants had a license to market, sell, advertise, or otherwise offer the security.

93. Defendants used interstate means (i.e., phone, internet, email) in connection with the sale.

94. Defendants used false information in the offering of the securities.

95. Defendants' offerings, which induced Plaintiff into a transaction he would not have otherwise entered into, contained false statements of material fact and/or omitted key facts necessary for Plaintiff to make an informed decision.

96. Defendants solicited Plaintiff for their scheme by both lying directly about the returns possible and intentionally omitting material facts, such as the fact that none of them were registered as a broker-dealer.

97. Defendants provided materials and conducted presentations at their conferences and through their business to create a façade of legitimacy.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. An entry of judgment in Plaintiff's favor and against Defendants, jointly and severally, on all Counts of this Complaint;

B. An award of the principal sum of $350,000.00, plus pre-and post-judgment interest, for

breach of the Promissory Note and Guaranty;

C.    An award of damages for unjust enrichment as may be proven at trial;

D.    An award of damages for conversion as may be proven at trial;

E.    An award of damages for negligent misrepresentation as may be proven at trial;

F.    An award of damages for fraud and civil conspiracy as may be proven at trial;

G.    An award of damages for violations of the Securities Act as may be proven at trial;

H.    An award of pre-and post-judgment interest, costs and attorneys' fees;

I.    For all such and further relief as that is available under law and equity.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues properly tried to a jury.

Dated: October 20, 2025
       New York, New York

THOMPSON & SKRABANEK, PLLC

By: _____
J.R. Skrabanek
515 Madison Avenue, 31st Floor
New York, NY 10022
Tel: (646) 568-4280
jrs@ts-firm.com

ATTORNEYS FOR PLAINTIFF